Haywood, Judge,
delivered the opinion of the court. The object of this bill is to have a decree for the one half of a tract of land devised by Joseph Thompson to Gritty Thompson, afterwards Critty Laughlin and her heirs.
The facts stated in the hill to entitle the plaintiffs to relief, are these: — that said Joseph and his son James, purchased jointly a tract of land, taking a bond to them jointly for the title from Pitman, the vendor; the quantity being about 240 acres. That James paid Joseph one half of the purchase money, that Joseph got a deed to himself alone, and delivered the bond for title — that James’ half was laid off by Joseph, who put him in possession thereof.
The answer denies the joint purchase, the payment of half the consideration money by James, and all other facts material to the relief sought by the complainants. The hill states the death of James, and that complainants are his heirs at law, and this is admitted.
The facts, as stated by the evidence, are, that the lands were purchased by Joseph, the father; that James set off with his father to get a bond for title; that they soon returned, the old man being in an ill humor, saying to his wife, that James, bis son, wanted the writing to appropriate the whole land to himself; at which the old lady expressed her surprise and disapprobation; that they then set off again, and that the bond was then drawn to Joseph and James, as the obligees, and both became hound as obligors for the purchase money, Joseph at the time being first subscribed.
That Joseph allotted to James his pari of the land, who *98 took possession and rented the lands with the possession for many years, and until his death in June, 1814.
That before the year 1814, Joseph, the father, became displeased with James, the latter having received money jn "Virginia for the old man, which he wasted; having also sold 100 acres of an adjoining tract which the old man intended for his daughter, and having become involved in debt, and having also had an unhappy difference with his wife, which had caused a separation between them.
Under these circumstances, the old man went to Pit-man, the vendor, delivered to him the bond in which Joseph and James were obligees, and obtained a new bond to himself alone, as obligee; and afterwards, in 1816, got the deed from Pitman to himself alone; Pitman having first applied to James, who told him to make the deed to the father. And when James was told that the deed had been made to the father, he observed it was well enough, as the matter was well understood between him and his father.
After this, James continued the possession, renting the land for his own benefit, until his death.
James, speaking to a witness, doubted whether the old man would give him the land; and when inquired of whether there was a writing, said there had been a bond, but it was not then to be had.
The evidence shews that up to about the time the old man took a new bond, he had remained steady in the purpose of considering the land allotted to James as his, but that afterwards he seemed desirous to have it in his own power. No money was ever paid by James to Pitman, the vendor, as stated in the bill.
It is now argued in opposition to the relief sought, that they must be relieved, if at all, by proving the case made in the bill, and not by proof of another, although the latter, had it been made, would have entitled them to relief; and that the bill alleges, payment of half of the purchase money by James, which was not proved, and which was not the fact.
Certainly the matter staled in a bill must not be depar *99 ted from, unless part of the matter alleged he immaterial to the relief; hut if, without the part alleged, there may he the relief prayed for upon the other parts stated in the bill, then the immaterial matter so alleged need not he proved. If this were a bill to compel Pitman to make a conveyance, it might be material to entitle James to allege payment of the consideration or an obligation to pay. But the money being secured to Pitman by a bond in which both Joseph and James were obligors, a good equitable estate passed to the obligees, according to the bond made to them; not to that obligee who paid the money, hut to both; leaving to the obligees to settle among themselves their reciprocal demand in relation to the purchase money.
The estate in equity arises whenever the vendor is-excluded from saying that the obligation to convey on his part was merely voluntary — and whenever the equitable estate is raised, it can never be taken from the equitable owner without his consent.
Suppose that James had been the only obligee, and that his father alone had given a bond for the purchase money, and then the father should get possession of the bond to his son for a title, and take a new bond himself, would that divest the equitable estate out of the first obligee? Most certainly not. And how does the case differ if the bond he given to two, and one deliver it to the vendor, and take a new bond to himself — does that divest the equitable estate of his co-obligee any more than in the former case? Certainly not — for in both instances the assent of the equitable owner is wanting.
The payment of the purchase money by A. who purchases in the name of B. will make B. a trustee for A. Not so, however, if B. were not a stranger, but a son un-advanced — for then B. would not be a trustee lor A.
When, therefore, the bond is made for title to A. and B., and the money is paid by A, the father, this is an ad- , vancement to B, and the equitable estate vests in him, and on his death descends to his heirs; and if the deed be made to A, instead of A and B, the grantee becomes a *100 trustee for B, of the legal estate, and must convey as he shall direct.
Here, it is said, that the equitable estate was expressly given up to Joseph, when James directed Pitman to con-v0y †0 Joseph.
If the clear meaning of Jamés was to relinquish his equity to Joseph, absolutely and unconditionally, then his equity might be extinguished; but such evidence must be unequivocal and satisfactory, and must have been clearly understood both by Joseph and James, to be an unconditional relinquishment by James. The evidence does not prove this — Pitman did not so understand it. He took a bond from Joseph when he made him a deed, to convey the one half to James; and why do so, if what passed between him and James purported that James relinquished his claim, and if the old man so understood it, why did he give such bond?
James said, when told of the deed to his father, that the matter was understood between them.
There is no such evidence of relinquishment, as is necessary, according to the rule just laid down, to repel James, the equitable owner, from claiming his equitable estate.
According to this view of the case, James died entitled to an equitable estate in these lands, which descended to his sons, the complainants, on his death.
Decree, therefore, that the complainants are entitled to the one half of the tract described in the bill, to be set apart and allotted by commissioners, to be appointed for that purpose.
The division must be made by metes and bounds, and report thereof returned into this court and confirmed.
The part allotted to the complainants shall be vested in them and their heirs, by the final decree of this court.
Decree accordingly.